UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED

DEC 1 2 2023

~Heather~ Thiel
CLERK

| | |
|---|---|
| C. GRACE FREEMAN, HARRY FREEMAN, CINDY GEHM, BRIAN GEVIK, C. BRUCE GRAY, ELIZABETH HANSON, CONSTANCE KRUEGER, MATTHEW PESICKA, SUSANNE SKYRM, JERRY WILSON, and NORMA WILSON,<br><br>Plaintiffs,<br><br>vs.<br><br>CLAY COUNTY BOARD OF COUNTY COMMISSIONERS, CLAY COUNTY BOARD OF ADJUSTMENT, and TRAVIS MOCKLER, individually and in his official capacity as chair of the Clay County Board of County Commissioners and Clay County Board of Adjustment,<br><br>Defendants. | 4:22-CV-04177-CBK<br><br>MEMORANDUM OPINION AND<br><br>ORDER |

This matter is before the Court on defendants, Clay County Board of County Commissioners, Clay County Board of Adjustment, and Travis Mockler ("defendants"), motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Doc. 6 at 1.

## BACKGROUND

On or about August 10, 2022, the Clay County Planning and Zoning Commission ("the Planning Commission") granted a Conditional Use Permit ("CUP") to a third-party, the Daniel Heine Living Trust ("the Trust"), to develop Trust land situated adjacent to the

the Daniel Heine Living Trust ("the Trust"), to develop Trust land situated adjacent to the Missouri River. Doc. 1 at 4; Doc. 7 at 4. Plaintiffs filed an appeal of the Planning Commission's CUP grant to the Trust and was heard by defendants sitting as the Clay County Board of Adjustment ("Board of Adjustment") on August 30, 2022. Id. The Board of Adjustment denied overturning the Planning Commission's grant of a CUP to the Trust. Doc. 1 at 5; Doc. 7 at 5. The Board of Adjustment needed a two-thirds (66%) majority to overturn the CUP grant and failed to do this with only three of the five members (60%) voting to overturn the CUP grant. Id.

Plaintiffs contend that the appeal should have been heard by the Clay County Board of Commissioners ("Board of Commissioners"), which only needs a three-fifths majority (60%) to overturn an appeal, and not the Board of Adjustment. Id. The Board of Commissioners is made up of five local officials, chaired by Travis Mockler. Doc. 1 at 4, 5; Doc. 7 at 4-5. The Board of Commissioners, made up of the same five officials, also sits as the Board of Adjustment under local ordinance. Doc. 1 at 84; SDLC 11-2, Clay County Ordinance Art. 9.01.

Plaintiffs' claims all stem from the above appeals process which plaintiffs contend was a violation of state law and county ordinance. Doc. 1; Doc. 11. Plaintiffs claim they are harmed as they were personally involved in requesting the appeal from the CUP grant. Doc. 1 at 3; Doc. 7 at 3. Plaintiffs claim the Trust's planned development along the Missouri River will damage the aesthetic value of the land and contribute to pollution and run off into the Missouri River. Doc. 1 at 6; Doc. 7 at 5. Additionally, plaintiffs claim the Trust's development along the Missouri River will have an outsized impact upon them because they frequently canoe and kayak, photograph, paint, fish, lead paid tours of, host memorial services along, and enjoy that stretch of the Missouri River more so than the general public. Doc. 1 at 5-6; Doc. 7 at 5. From the allegedly improper appeals process, the plaintiffs claim:

2

1. Count 1: §1983 civil rights violation in which plaintiffs specify the violation is of the ". . . First and Fourteenth Amendments to the United States Constitution, by giving insufficient notice of hearing and providing a legally insufficient hearing." Doc. 1 at 11, ¶45.

2. Count 2: §1983 policy and custom violation in which plaintiffs allege a <u>Monell</u> claim, stating "[d]efendants have developed, maintained, and executed the policies, practices, and customs negatively impacting Plaintiffs of their rights, privileges, and immunities secured by the United States Constitution, namely the policy of unlawfully hearing CUP appeals as the Board of Adjustment in contravention of the Ordinances." Doc. 1 at 12, ¶53.

3. Count 3: plaintiffs request declaratory relief clarifying South Dakota law and Clay County ordinance, and declaring plaintiffs successfully overturned the CUP grant to the Trust. Doc. 1 at 14, ¶65.

4. Count 4: 42 U.S.C. §1988 attorney's fees. Doc. 1 at 14, ¶68.

In response, on January 18, 2023, defendants motioned to dismiss plaintiffs' claims for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Doc. 6. Defendants contend that plaintiffs' §1983 claim fails because plaintiffs have failed to plead facts that would demonstrate a violation of a constitutionally protected federal right. Doc. 7 at 1.

In plaintiffs' reply to defendants' motion to dismiss, plaintiffs add the additional claims that the allegedly improper appeals hearing 1) was not impartial, in violation of their due process rights (Doc. 11 at 4), 2) denied plaintiffs' right to petition the government under the First Amendment (Doc. 11 at 17), and 3) a facial and as-applied challenge to the constitutionality of the state law and county ordinance governing the CUP appeals hearing. Doc. 11 at 13.

## LAW

### I. Fed. R. Civ. P. 12(b)(1).

For motions made under Federal Rule of Civil Procedure 12(b)(1), the party asserting jurisdiction holds the burden of proof to show that this Court is vested with jurisdiction to hear the underlying claims. Benchmark Ins. Co. v. SUNZ Ins. Co., 36 F.4th 766, 771 (8th Cir. 2022). By design, federal courts are courts of limited jurisdiction. U.S. CONST., ART. III, § 2, cl.1; Badgerow v. Walters, 142 S.Ct. 1310, 1315 (2022). Motions to dismiss for lack of subject matter jurisdiction may be either a "facial" or a "factual" challenge. Croyle by and through Croyle v. United States, 908 F.3d 377, 380 (8th Cir. 2018). Here, this is a facial challenge where the Court need only look at the face of the pleadings to assess whether it is properly vested with subject matter jurisdiction. Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016). In this Court's review, ". . . the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal quotation marks omitted).

### II. Fed. R. Civ. P. 12(b)(6).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Delker v. MasterCard Int'l Inc., 21 F.4th 1019, 1024 (8th Cir. 2022); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In deciding a motion to dismiss, courts ordinarily do not consider matters outside the pleadings." Gillick v. Elliott, 1 F.4th 608, 610 n.2 (8th Cir. 2021). However, courts may consider "materials necessarily embraced by the pleadings." LeMay v. Mays, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks omitted). In short, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" City Union Mission, Inc. v. Sharp, 36 F.4th 810, 815 (8th Cir. 2022) (quoting Iqbal, 556 U.S. at 678). Nevertheless, courts "are not

4

bound to accept as true a legal conclusion couched as a factual allegation." Stoebner v. Opportunity Fin., LLC, 909 F.3d 219, 225–26 (8th Cir. 2018) (citing Iqbal, 556 U.S. at 678).

## DISCUSSION

I am well acquainted with the pleasures of canoeing and kayaking. I earned a merit badge as a Boy Scout for canoeing. My partner and I placed third in a state Boy Scout canoe race from Redfield to Huron on the James River. My sons and I have made six three-day trips down the St. Croix River in Wisconsin. I taught my children how to intentionally capsize a canoe and then swim under it and hold on to the gunnels as you paddle toward shore. I taught them how to use the J-stroke while paddling in the stern. We still own a canoe and a kayak. We have used another kayak in the Gulf of Mexico many times. Having said all that, even in the liminal stages of this claim, it is apparent that a Constitutional right to canoe or kayak, especially at one particular location, does not exist.

This claim should not be before a federal court as plaintiffs have failed to state a claim. Specifically, they have not pleaded facts, accepted as true, which would support a § 1983 claim for violation of a Constitutional right, privilege, or immunity. Further, this Court will not exercise supplemental jurisdiction over plaintiffs' remaining declaratory relief claim as it arises entirely from state law and county ordinance. For the following reasons, which are explained below, defendants' motion to dismiss should be granted without prejudice. Plaintiffs' §1983 claims and § 1988 relief will be addressed first, as they are federal claims, and end with plaintiffs' request for declaratory relief interpreting state law.

I.     § 1983 Law: Counts 1, 2, and 4.

42 U.S.C. § 1983 authorizes private parties to file complaints against individuals, municipalities, or any defendant who (1) acts under the "color of state law" and (2)

violates "any rights, privileges, or immunities secured by the Constitution and laws [of the U.S.] . . ." 42 U.S.C. § 1983; *see* West v. Atkins, 487 U.S. 42, 48 (1988). §1983 thus does not create civil rights but provides a remedy for a state's violation of civil rights. Therefore, § 1983 is not a tool to enforce state law rights. Baker v. McCollan, 443 U.S. 137, 146 (1979) (The Supreme Court held that under § 1983 a state right does not become a Constitutional violation merely because a state actor is involved; there must be an underlying Constitutional right which is violated, explaining that "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official."). Both parties agree that the issue in this case is the second part of a § 1983 analysis, whether a violation of a right, privilege, or immunity secured by the Constitution and laws of the U.S. has been alleged.

Plaintiffs claim that the § 1983 violations they suffered in counts 1 & 2 fall into two categories, 1) due process violations, and 2) First Amendment violations. Doc. 1 at 11, ¶45; Doc. 1 at 12, ¶53. For this reason, and because these are two analytically distinct violations, this discussion will first review plaintiffs' claimed due process violations and then the alleged First Amendment violations. Once counts 1 & 2 are discussed, the discussion will proceed to plaintiffs' count 4, request for attorney's fees for a § 1983 violation, and end on count 3, plaintiffs' request for declaratory relief over state law.

### a. Due Process Violations under §1983: Counts 1 & 2.

#### i. Introduction

Plaintiffs fail to plead facts showing a Constitutionally protected right, privilege, or immunity has been violated. Therefore, procedural, and substantive due process were never violated because plaintiffs were never entitled to those protections.

Plaintiffs claim both a procedural and subsequent due process violation which both stem from their allegation that the August 20, 2022, hearing had procedural discrepancies. With regards to plaintiffs' procedural due process claim, plaintiffs argue

that their property interests and liberty interests were violated. With regards to their substantive due process claim, plaintiffs allege an as-applied and facial challenge to several South Dakota state laws effectively arguing the laws are unconstitutional because of the hearing's procedural flaws.

ii. Due Process of Law

The Fourteenth Amendment due process clause states that no State shall, ". . . deprive any person of life, liberty, or property, without due process of law. . ." U.S Const. amend. XIV, §1. When the alleged § 1983 violation is based on procedural or substantive due process a two-part analysis occurs, starting with determining 1) whether a state has interfered with a life, liberty, or property interest, and, if so 2) whether the procedures attendant upon that deprivation were constitutionally sufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972)); see Swarthout v. Cooke, 562 U.S. 216, 219 (2011); Movers Warehouse, Inc. v. City of Little Canada, 71 F.3d 716, 718 (8th Cir. 1995) (stating, "[t]he possession of a protected life, liberty, or property interest is thus a *condition precedent* to the government's obligation to provide due process of law."); Rogers v. City of Little Rock, Ark., 152 F.3d 790 (8th Cir. 1998) (8th Circuit wrote, "[t]he first step in a §1983 analysis is 'to isolate the precise constitutional violation' which is alleged," citing Baker v. McCollan, 442 U.S. 137, 140 (1979); see also Dover Elevator Co. v. Ark. State Univ., 64 F.3d 442, 445-46 (8th Cir. 1995) ("[a]nalysis of . . . a due process claim must begin with an examination of the interest allegedly violated."). In other words, the misapplication of a procedural process is not in and of itself a violation of due process unless there is an underlying right which first triggers due process protections. Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997) (citing Movers Warehouse, Inc., 71 F.3d at 718 stated ". . . where no such [Constitutional or federal] interest exists, there can be no due process violation."). A state's interference with a life, liberty, or property interest will require moving on to the

7

second analytical step.  If no such interference exists then the analysis ends and there is no § 1983 violation.  Id.

As stated above, plaintiffs have claimed they have underlying property and liberty interests which were violated, which triggers procedural and substantive due process protections.  These will be discussed respectively.

### iii.  Procedural Due Process Violation
#### 1.  Discussion of Property Interest Violation

A property interest under the due process clause is ". . . not created by the Constitution."  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 578 (1972). "Rather [property interests] are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id.  Further, the property interest must be a legitimate claim of entitlement to it, and not a mere abstract need or desire for it.  Id. at 577.  An individual has a property interest in a government provided "good" when the state establishes objective eligibility standards for the "good."  Id. at 567.  The Supreme Court has recognized property interests in state provided goods in several cases, specifically recognizing public assistance (Goldberg v. Kelly, 397 U.S. 254, 264 (1970)), Social Security disability benefits (Mathews v. Eldrige, 424 U.S. 319, 332 (1976)), drivers' licenses (Bell v. Burson, 402 U.S. 535, 539 (1971)), public school education (Goss v. Lopez, 419 U.S. 565, 573-74 (1975)), municipal furnished utility services (Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11 (1978)), and public employment (Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 538-39 (1985)) in which an individual may have a property interest.

Plaintiffs have not properly shown they have a protected property interest which would trigger due process protections.  Plaintiff's state, ". . . they are aggrieved by the Decision (the upholding of the CUP grant to the Trust) in ways the general public is not

8

aggrieved." They allege they regularly use the section of the Missouri River adjacent to the zoned land at issue, for recreational activities. Doc. 1 at 5-6. Plaintiffs argue that that their recreational use along this stretch of the Missouri River amounts to a property interest in the Trust's privately owned land adjoining the river. While landowners, the Trust included, must not use their property in a way which would injure the lawful property rights of another[1], plaintiffs have not pleaded any facts which this Court could interpret as a property interest created by state law. Plaintiffs have not pleaded any facts which suggest the State of South Dakota has created and defined a property interest in the aesthetic view of another's private land. Nor have plaintiffs pleaded facts that state law allows the recreational use of a water way to create a property interest in the adjoining land. Plaintiffs have not pleaded that a property interest has been violated, and therefore have not pleaded a § 1983 claim.

### 2. Discussion of Liberty Interest Violation

The Supreme Court in Washington v. Glucksberg recognized that liberty interests exist beyond the absence of physical restraint stating that, ". . . in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity. . ." Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997) (cleaned up). The Supreme Court then went on to explain a two-step process for recognizing a fundamental liberty under the Due Process Clause, stating the liberty must be 1) "deeply rooted in this Nation's history and tradition . . .", and "'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed,'" and 2) "a 'careful description' of the asserted fundamental liberty interest." Id. at 721. The Supreme Court stated they are reluctant to recognize new substantive due process rights, "least the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of

---

[1] As the old maxim states, "sic utere tuo ut alienum non laedas."

the Members of this Court," because "[b]y expanding constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." Id. at 720.

Plaintiffs have not properly shown they have a protected liberty interest which would trigger due process protections as they have not alleged a liberty interest, nor argued for the recognition of one. Plaintiffs argue that the defendants ". . . violated their liberty interests in receiving proper procedure . . ." when proper procedure was not followed in the August 20, 2022, hearing. Doc. 11 at 7. In doing so, plaintiffs have just rehashed their claim that the hearing suffered from procedural flaws and not that they had an underlying liberty interest which was to be protected by due process. As previously stated, the misapplication of a procedural process is not in and of itself a violation of due process unless there is an underlying right which first triggers due process protections. Dobrovolny v. Moore, 126 F.3d 1111, 1113 (8th Cir. 1997) (citing Movers Warehouse, Inc., 71 F.3d at 718 stated ". . .where no such [Constitutional or federal] interest exists, there can be no due process violation.").

Plaintiffs show their misunderstanding of due process in their citation of Vitek for the proposition that, "[t]he Supreme Court has found protected liberty interests where state law creates an expectation related to individual liberty." Vitek v. Jones, 445 U.S. 480, 483 (1980). In Vitek, a Nebraska law allowed the Director of Correctional Services to transfer a prisoner to a mental hospital upon a medical finding that the prisoner was suffering from a mental disease that could not be treated in prison. Id. The Supreme Court found that the prisoner's liberty interest in his bodily autonomy was implicated in the statute if he could be involuntarily confined in a mental institution and subjugated to involuntary psychiatric treatment. Id. at 493. Plaintiffs' case is distinct from Vitek, where a state law implicated an individual's liberty interest in bodily autonomy since plaintiffs only plead state law and a county ordinance setting forth the procedure to be used in CUP appeal hearings. These state law procedures do not implicate plaintiffs' bodily autonomy, or any of the other liberty interests recognized by the Supreme Court,

10

and plaintiffs do not argue as such.  Plaintiffs only plead the mistaken understanding that procedural violations in and of themselves are a violated liberty interest.  Due process is not in and of itself a liberty interest and thus a procedural flaw is not a due process violation without an underlying Constitutional right which triggers due process protection.  Kentucky Dept. of Corrections, 490 U.S. at 460 (citing Roth, 408 U.S. at 571).  Plaintiffs do not claim any recognized liberty interest is violated.  Furthermore, plaintiffs do not plead nor define the existence of a newly recognized liberty interest, such as in the state procedural law itself, or in privately owned land adjacent to bodies of water used for recreation.

The same issue applies to plaintiffs' citation to South Dakota Supreme Court cases Holborn and Hanig, for the proposition that the ". . . right to due process includes fair and impartial consideration by a local governing board."  Holborn v. Deuel Cnty. Bd. of Adjustment, 955 N.W.2d 363, ¶ 21 (S.D. 2021); Hanig v. City of Winner, 692 N.W.2d 202, 205 (S.D. 2005).  While this is true, plaintiffs miss the fact that due process protections in both cases were predicated on the fact that the appealing parties had Constitutionally recognized property interests.  Id.  In Hanig the property interest was a city liquor license.  Hanig, 692 N.W.2d at 203.  In plaintiffs' cite of Holborn ¶ 21, the South Dakota Supreme Court cites Hanig and Armstrong, another due process South Dakota Supreme Court Case, and involved appellants, who were local homeowners, whose property would be affected by plans to build a grain silo.  As stated in the last paragraph, plaintiffs have only pleaded procedural state law and asserted that the claimed procedural violations of the hearing, in and of themselves, violated a liberty interest.  Due process is not in and of itself a liberty interest and thus a procedural flaw is not a due process violation without an underlying Constitutional right which triggers due process protection.  Kentucky Dept. of Corrections, 490 U.S. at 460 (citing Roth, 408 U.S. at 571).  Plaintiffs do not claim any recognized liberty interest is violated.  Furthermore, plaintiffs do not plead nor define the existence of a newly recognized liberty interest.  Therefore, plaintiffs have not alleged that a liberty interest has been violated.

11

### 3.  Discussion of a "Protectable Interest" Violation

Plaintiffs also put forth an argument that what constitutes a ". . . protectable interest for purposes of §1983 is conceptually similar to what is required for Article III standing, and federal courts regularly find that recreational, environmental, and aesthetic interests are sufficient." Doc. 11 at 8 (plaintiffs then go on to cite cases discussing the issue of standing, citing Summers v. Earth Island Inst., 555 U.S. 488, 494 (2009), Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 184–85 (2000); Kuehl v. Sellner, 887 F.3d 845, 851 (8th Cir. 2018); and Sierra Club v. U.S. Army Corps of Engineers, 645 F.3d 978, 989 (8th Cir. 2011)).  This Court cannot understate how mistaken plaintiffs' assertion of law is; and will clarify that Article III standing and what constitutes a Constitutionally protected right, privilege, or immunity are not analogous and should not be considered one and the same.  The law for recognizing a Constitutionally protected property and liberty interests is stated above, while standing steams from principles of justiciability from Art. III, § 2 of Constitution.  U.S. CONST., ART. III, § 2.

### iv.  Substantive Due Process Violations

Plaintiffs failed to plead their substantive due process claims, specifically an as-applied and a facial claim, in their original complaint; therefore, the claims should be dismissed as they will not be considered.

> "As a general rule, we will not consider arguments raised for the first time in a [response] brief. *Akeyo v. O'Hanlon,* 75 F.3d 370, 374 n. 2 (8th Cir.1996). We are not precluded from doing so, however, particularly where, as here, the argument raised in the [response] brief supplements an argument raised in a party's initial brief. *See United States v. Head,* 340 F.3d 628, 630 n. 4 (8th Cir.2003); *see also Parmenter v. Fed. Deposit Ins. Corp.,* 925 F.2d 1088, 1093–94 (8th Cir.1991) (considering an argument raised for the first time in a [response] brief where "the interests of justice" required a remand to the district court to address the question

12

raised); *Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir.1986) ("The
matter of what questions may be taken up and resolved for the first time on appeal
is one left primarily to the discretion of the courts of appeal, to be exercised on the
facts of the individual cases.") (quoting *Singleton v. Wulff*, 428 U.S. 106, 121, 96
S.Ct. 2868, 49 L.Ed.2d 826 (1976))."

Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006) (originally
discussed a reply brief, not a response brief; the substantive law still applies to a response
brief). Plaintiffs raise their as-applied and facial claims for the first time in their response
brief opposing defendants' motion to dismiss. Doc. 11 at 13. "We will not consider
issues raised for the first time in a [response] brief." Viking Supply v. Nat'l Cart Co., 310
F.3d 1092, 1099 (8th Cir. 2002) (Kornmann, District Judge, sitting by designation, citing
Neb. State Legislative Bd., United Transp. Union v. Slater, 245 F.3d 656, 658 n. 3 (8th
Cir.2001)).

### v.  Conclusion on Procedural Due Process Violation.

This Court finds that plaintiffs have not pleaded facts, taken to be true, which
establish a violation to a Constitutionally protected right, immunity, or privilege
occurred. Therefore, the plaintiffs have not pleaded any facts which would trigger due
process protections, and no due process violation could have occurred. Additionally,
plaintiffs did not properly plead their substantive due process claim in their complaint.
This Court concludes plaintiffs have not pleaded a § 1983 violation predicated on the
violation of procedural or substantive due process.

### b.  First Amendment Violations: Counts 1 &2.

Plaintiffs have not plead facts which show a First Amendment violation
occurred because 1) plaintiffs did not raise their retaliation and right to petition claims for
the first time in their complaint, instead doing so in a response brief, and 2) plaintiffs

13

have not alleged a cognizable right to a First Amendment retaliation or right to petition claim.

Plaintiffs in their initial complaint claim, ". . . specifically the First and Fourteenth Amendments to the United States Constitution, [were violated] by giving insufficient notice of hearing and providing a legally insufficient hearing." Doc. 2 at 11 (emphasis added). Plaintiffs raise a retaliation claim and a right to petition claim for the first time in their response to defendants' motion to dismiss, and not in their original complaint. Doc. 2; Doc. 11 at 17.

Plaintiffs' claim of insufficient notice and an improper hearing are a part of determining whether sufficient due process procedures were provided and are not individual First Amendment claims. As stated above under Due Process of Law, step two of a due process analysis consists of determining whether the procedures attendant upon a Constitutional deprivation were constitutionally sufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972)). Since the Court found that plaintiffs did not allege a due process violation there was no need to move on to the second step of this analysis because due process protections were never triggered.

Further, "[a] pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678. Removing plaintiffs' assertion that insufficient notice and an improper hearing are Fist Amendment claims, leaves plaintiffs merely asserting their First Amendment rights were violated. Doc. 1, ¶¶45, 47, 52. Plaintiffs do not plead any other facts in their complaint which would support a First Amendment claim. With only a threadbare assertion of a First Amendment violation, the Court finds that plaintiffs have failed to allege a First Amendment violation.

Plaintiffs' First Amendment retaliation and right to petition claim will not be considered by this Court because they were not claimed in plaintiffs' initial complaint.

14

Defendants, in their motion to dismiss, address an argument against a retaliation claim out of an abundance of caution because they are not sure of the type of First Amendment claim plaintiffs are making.  In making this argument the defendants maintain that no retaliation claim was made by plaintiffs, but deduce plaintiffs are hinting at such a claim though no factual allegations would support such a claim.  Doc. 6 at 16-17.  Plaintiffs for the first time in their response opposing the motion to dismiss, retroactively assert that they are alleging a retaliation claim.  Doc. 11 at 18.  Along with the retaliation claim, plaintiffs retroactively raise a right to petition claim for the first time in their response brief opposing defendants' motion to dismiss.  Doc. 1, Doc. 11 at 17.  Since the plaintiffs did not make their retaliation and right to petition claims for the first time in their complaint, this Court, "...will not consider issues raised for the first time in a [response] brief." Viking Supply, 310 F.3d at 1099 (cleaned up).

Even if plaintiffs had properly made either claim in their complaint, there are no factual allegations within the complaint to support them.  Doc. 1, Doc. 11 at 17. Therefore, the Court finds that the plaintiffs did not make factual allegations in their initial complaint which would support a retaliation or right to petition claim.  City Union Mission, Inc. v. Sharp, 36 F.4th 810, 815 (8th Cir. 2022) (quoting Iqbal, 556 U.S. at 678, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Plaintiffs have not pleaded facts, taken to be true, which establish a violation of the First Amendment because they have only recited a threadbare accusation, and failed to properly plead their retaliation and right to petition claims in their original complaint. Therefore, a Constitutionally protected right, immunity, or privilege has not been violated.  Subsequently, this Court concludes plaintiffs have not pleaded a § 1983 violation predicated on the violation of the First Amendment.

c.  Discussion of the Monell Claim: Count 2.

Plaintiffs second count, a Monell claim, fails because they have pleaded facts which, if assumed true, would not show a due process or First Amendment violation.

Plaintiffs state in their complaint that, "[d]efendants have developed, maintained, and executed the policies, practices, and customs negatively impacting Plaintiffs and depriving Plaintiffs of their rights, privileges, and immunities secured by the United States Constitution, *namely the policy of unlawfully hearing CUP appeals as the board of Adjustment in contravention of the Ordinances*." Doc. 1 at 12 (emphasis added).

The Supreme Court established in Monell that a municipality is subject to liability under § 1983 only when the violation of the plaintiff's Constitutionally protected rights can be linked to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker, and cannot be held liable on the basis of respondent superior.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-695 (1978).  Monell allowed municipalities to be sued under § 1983 but did not alter the § 1983 claim requirement that a violation of a Constitutionally protected right, interest, or immunity actually occur.  Id.; Calgaro v. St. Louis Cty., 919 F.3d 1054, 1058 (8th Cir. 2019) (the 8th Circuit *citing* Monell, 436 U.S. at 694, stated "[a] county may be liable for a constitutional violation under § 1983 only if the violation resulted from a policy or custom of the municipality."); 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988).  Municipalities are not liable under Section 1983 "solely because it employs a tortfeasor."  Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 985 (8th Cir. 2016) (*citing* Monell, 436 U.S. at 691).  Instead, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee."  Id. (*citing* Atkinson v. City of Mountain View, 709

16

F.d 1201, 1214 (8th Cir. 2013)).  Plaintiffs claim that defendants had a pattern and policy of unlawfully hearing CUP appeals as the Board of Adjustment in contravention of the Clay County ordinances.  Doc. 1 at 12; Doc. 11 at 12.

Municipal policy is a "'deliberate choice to follow a course of action . . . made from among various alternatives" by an official who has the final authority to establish governmental policy." Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).  The Supreme Court in City of St. Louis addressed two ways in which municipal law may be based, 1) express municipal policy, like an ordinance, and 2) a pattern or custom.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  While an express policy is obvious, a custom or pattern is less rigidly defined.  Instead, custom relates to a "pattern of 'persistent and widespread' unconstitutional practices which become so 'permanent and well settled' as to have the effect and force of law." Jane Doe A, 901 F.2D at 646 (quoting Monell, 436 U.S. at 691).  The Eighth Circuit has further defined what constitutes a valid claim for municipal liability derived from an unofficial custom: (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]hat plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation." Jane Doe A, 901 F.2D at 646 (quoting Harris v. City of Pagedale, 821 F.2d 499, 504-07 (8th Cir. 1987).

Plaintiffs fail to state a Monell claim because they have not pleaded more than the threadbare assertion that 1) their Constitutional rights were violated, and 2) defendants had a pattern or policy of unlawfully hearing CUP appeals.  As discussed previously, even if plaintiffs' pleadings are assumed true, plaintiffs have not plead facts which show they suffered a due process or First Amendment violation.  A required element of § 1983 Monell claim is that plaintiffs suffered a violation to a Constitutional right, privilege, or

17

immunity. Monell, 436 U.S. at 690-695; 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Therefore, without the pleading of a Constitutional violation, plaintiffs have not properly plead a Monell claim.

The Court finds that even if the plaintiffs had properly pleaded a Constitutional violation, plaintiffs still failed to plead a Monell claim because plaintiffs pleaded nothing but a threadbare conclusion that the defendants had a pattern or policy of unlawfully hearing CUP appeals. Plaintiffs do not provide a Clay County ordinance, regulation, or policy statement which directs the Board of Commissions to provide procedurally faulty CUP appeal hearings, nor have plaintiffs pleaded any facts which could be interpreted as the Board of Commissioners being directed to provide procedurally faulty CUP appeal hearings. Therefore, plaintiffs' pleadings do not show defendants have an express policy ". . . of unlawfully hearing CUP appeals as the Board of Adjustment in contravention of the Ordinances." Doc. 1 at 12. Plaintiffs have also failed to plead facts showing defendants have a "pattern of 'persistent and widespread' unconstitutional practices which become so 'permanent and well settled' as to have the effect and force of law." Jane Doe A, 901 F.2d at 646 (quoting Monell, 436 U.S. at 691). Plaintiffs only plead that the procedural flaws occurred once, at their hearing, and do not plead that such procedural flaws occur frequently enough to ". . . have the effect and force of law." Doc. 1; Doc. 11. Plaintiffs plead no facts that such procedural flaws are widespread, that policymaking officials have notice of such flaws after prior similar misconduct, nor that this alleged municipal custom was the driving force for the procedural flaws. Id. Therefore, even if plaintiffs had pleaded a Constitutional violation, plaintiffs still would not have pleaded a Monell claim.

   d.   Discussion of § 1988 Attorney's Fees: Count 4.

Plaintiffs' request for attorney's fees under 42 U.S.C. § 1988 is dismissed as plaintiffs have not plead a claim to which they could be a prevailing party and be

18

awarded attorney's fees by the Court, in its discretion.  42 U.S.C § 1988(b)(c) (allows courts, in their discretion, to award the prevailing party in a § 1983 claim attorney's fees).

### e.  Conclusion on the Federal Claims: Counts 1, 2, & 4

Plaintiffs have failed to plead a § 1983 or a <u>Monell</u> violation occurred because they did not properly plead a Constitutional violation, specifically a due process or First Amendment violation.  Plaintiffs' failure to plead a § 1983 violation means plaintiffs are not entitled to their request for attorney's fees under § 1988.

## II.  Discussion of Declaratory Relief: Count 3.

This Court will not exercise supplemental jurisdiction over plaintiffs' request for declaratory relief because plaintiffs have not plead a claim which this Court has subject matter jurisdiction over for this request to accompany in federal court, and the request involves the interpretation of state law.

A district court with original jurisdiction over a federal claim additionally has supplemental jurisdiction over accompanying state law claims which stem "from part of the same case or controversy" as the federal claims.  28 U.S.C. § 1367(a); <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725-28 (1966) (Supreme Court wrote, "[t]he state and federal claims must derive from a common nucleus of operative fact."); <u>Starkey v. Amber Enterprises, Inc.</u>, 987 F.3d 758, 765 (8th Cir. 2021).  Supplemental jurisdiction is a doctrine of judicial discretion and is not a plaintiff's right.  <u>Gibbs</u>, 383 U.S. at 726. When courts are deciding whether to exercise supplemental jurisdiction they should consider judicial economy, convenience and fairness to litigants, and comity.  28 U.S.C. § 1367(c); <u>Gibbs</u>, 383 U.S. at 726; <u>Starkey</u>, 987 F.3d at 765.  The

Additionally, the South Dakota Supreme Court has held that the proper process of appealing a CUP decision by a county Board of Adjustment is filing a writ of certiorari with a South Dakota State circuit court.  <u>Hauck v. Clay Cnty. Comm'n</u>, 994 N.W.2d 707, 711 (S.D. 2023) (South Dakota Supreme Court affirmed that SDLC 11-2-61.1 requires an

appeal of the grant or denial of a conditional use permit (CUP) to be brought under a petition for a writ of certiorari.); Gonsor v. Day Cnty. Planning Comm'n, 996 N.W.2d 384, 387 (S.D 2023) (South Dakota Supreme Court 1) affirmed their interpretation in In re Yankton Cnty. Comm'n, 670 N.W.2d 34, 40 (S.D. 2003) that SDLC 11-2-61 was to occupy the field of appealing Board of Adjustment decisions, and 2) found the South Dakota Legislature intended that filing a writ of certiorari was the only remedy to appeal the decision of a Board of Adjustment.). Accordingly, plaintiffs' may have had an avenue to pursue their requested relief through state court. Why they did not do so instead of coming to federal court is a mystery. I do take note that the time to seek the writ of certiorari had expired before plaintiffs brought this action in federal court.

Plaintiffs' federal claims will be dismissed, and the only remaining claim before the Court is plaintiffs' request for declaratory relief interpreting state law to declare defendants violated said state law and plaintiffs successfully overturned the Board of Adjustments CUP grant to the Trust. Doc. 1 at 14, ¶65. The Court finds the declaratory relief is not closely tied to questions of federal policy or concern as it only regards state law and their application by Clay County. As such, it would promote comity with the state of South Dakota and justice for plaintiffs to have plaintiffs' request heard by a state court, as the state court can provide a more ". . . surer-footed reading of the applicable law." Gibbs, 383 U.S. at 726 (Supreme Court wrote, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.) Further, 28 U.S.C § 1367(c)(1) clearly grants District Courts discretion in exercising supplemental jurisdiction over remaining state claims when all other claims which the court has original jurisdiction over have been dismissed. 28 U.S.C § 1367(c)(1). This Court in its discretion refuses to exercise supplemental jurisdiction over plaintiffs' request for declaratory relief. 28 U.S.C § 1367(c)(1). Therefore, plaintiffs' request for declaratory relief should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

In addition, any declaratory relief would violate the "Pullman abstention doctrine" as explained in George v. Parratt, 602 F.2d 818, 820-22 (8th Cir. 1979).[2]  There was an available state remedy.  The challenged state law is not unclear.  This Court should avoid unnecessary federal interference in state operations and procedures.

## CONCLUSION

Defendants' motion for dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6) should be granted.  Plaintiffs' counts 1, 2, and 4 should be dismissed under Fed. R. Civ. P. 12(b)(6) because plaintiffs' have failed to plead a claim, specifically a Constitutional violation which is needed for a successful § 1983 violation, and subsequent recovery under § 1988.  Plaintiffs failed to plead a due process violation because they did not plead facts which showed they had a valid property or liberty interest.  Additionally, plaintiffs failed to properly plead a substantive due process violation because they did not plead their claims in their complaint, but in a response brief.  Plaintiffs failed to plead a Fist Amendment claim because they only recited a threadbare accusation that a First Amendment violation occurred, and the First Amendment claims they did make were made retroactively in their response brief.  For those reasons, plaintiffs failed to state a Monell claim, and for the additional reason that plaintiffs did not plead facts showing there was the existence of official or customary policy directing the Board of Adjustments to provide procedurally faulty CUP appeal hearings.  For those reasons, plaintiffs have not pleaded a § 1983 claim and are not entitled to attorney's fees; thus, plaintiffs have failed to plead a § 1988 request for relief.  Finally, plaintiffs' count 3 should be dismissed under Fed. R. Civ. P. 12(b)(1) since this

---

[2] The "Pullman abstention doctrine" requires consideration of 1) the effect of abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; 2) available state remedies; 3) whether the challenged state law is unclear; 4) whether the challenged state law is fairly susceptible to an interpretation that would avoid any federal constitutional question; and 5) whether abstention will avoid unnecessary federal interference in state operations.  The last factor mentioned incorporates two distinct considerations: a) whether there is a pending state action that will be disrupted, and 2) whether federal intervention would interfere with state procedures and policies in areas of special state interest.

Court will not exercise its discretionary supplemental jurisdiction over a state law claim, based, in part on the "Pullman abstention doctrine."

I know of no constitutional or other right to use a particular small portion of a navigable waterway or to avoid having to see another person's property bordering the river and I decline to so rule.

### ORDER

Based on the foregoing, and all the files and records herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' §1983 claim, count 1, is dismissed for failure to state a claim.

2. Plaintiffs' Monell claim, count 2, is dismissed for failure to state a claim.

3. Plaintiffs' §1988 claim, count 4, for attorney's fees is dismissed for failure to state a claim.

4. Plaintiffs' request for declaratory relief, count 3, is dismissed.

5. Defendants' motion to dismiss, Doc. 6, is GRANTED and plaintiffs' complaint is DISMISSED.

6. Costs are to be hereafter taxed against the plaintiffs by the Clerk and inserted in the amount of $_____.

Dated this 11th day of December, 2023.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

22